# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**PAUL JOHNSON,**                              )
                                               )
       **Plaintiff,**              )
                                               )   **Civil No. 1:07-cv-01033 (JDB)**
    **v.**                            )
                                               )
**DISTRICT OF COLUMBIA, et al.,**              )
                                               )
      **Defendants.**              )
_____)

### DEFENDANTS DISTRICT OF COLUMBIA, MAYOR ADRIAN M. FENTY, AND BOARD OF TRUSTEES, UNIVERSITY OF THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants District of Columbia, Mayor Adrian M. Fenty, and the Board of Trustees, University of the District of Columbia, by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 12 (b) (6), hereby move to dismiss plaintiff's second amended complaint herein. A Memorandum of Points and Authorities ("Memorandum") is attached hereto and incorporated herein. A proposed Order is also enclosed.

As stated more fully in the accompanying Memorandum, for the reasons that follow, plaintiff fails to state a claim upon which relief may be granted:

1.     Plaintiff fails to state a claim under Title VII (42 U.S.C.S. § 2000e et seq.), the Age Discrimination in Employment Act (29 U.S.C.S. § 621 et seq.), the Americans with Disabilities Act (42 U.S.C.S. § 12101 et seq.), the Rehabilitation Act (29 U.S.C.S. § 791 et seq.), the D.C. Human Rights Act (D.C. Code Ann. § 1-2512 (1981), or the Equal Pay Act (29 U.S.C. § 206(d) (1)), on the basis of gender, disability, age, retaliation, hostile environment or deprivation of equal pay;

2.    Even if plaintiff could establish viable claims on the aforementioned bases under the Acts raised, he has failed to exhaust administrative remedies as required and cannot establish a continuing violation that would allow him to maintain his claims;

3.    On information and belief, plaintiff has failed to provide proper notice pursuant to D.C. Code § 12-309 of his claims under the District of Columbia Human Rights Act; and

4.    Plaintiff's claims against Mayor Fenty are precluded by vicarious liability doctrine.

Since this is a dispositive motion, defendant was not required to obtain consent from plaintiff to the relief requested in this Motion.

WHEREFORE, defendants request that judgment be entered in their favor and the subject complaint is dismissed.

Date:  January 14, 2008                          Respectfully submitted,

                                                 PETER NICKLES
                                                 Interim Attorney General for the District of Columbia

                                                 GEORGE C. VALENTINE
                                                 Deputy Attorney General
                                                 Civil Litigation Division

                                                 /s/Kimberly Matthews Johnson
                                                 KIMBERLY MATTHEWS JOHNSON, #435163
                                                 Chief, General Litigation Sec. I

                                                 /s/Michelle Davy
                                                 MICHELLE DAVY, #454524
                                                 Assistant Attorney General
                                                 Sixth Floor South
                                                 441 4th Street, N.W.
                                                 Washington, D.C. 20001
                                                 (202) 724-6608; (202) 727-3625 (fax)
                                                 E-Mail: michelle.davy@dc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 14th day of January, 2008, that a copy of the foregoing

defendants District of Columbia, Mayor Adrian M. Fenty, and Board of Trustees, University of

the District of Columbia's Motion to Dismiss Second Amended Complaint was delivered by first

class mail postage prepaid or ECF, to:

<div style="margin-left: 4em;">

Rebecca N. Strandberg
8607 Second Avenue, Suite 405A
Silver Spring, MD  20910

/s/Michelle Davy
Michelle Davy
Assistant Attorney General

</div>

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| PAUL JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, et al., )<br>)<br>Defendants. )<br>_____) | Civil No. 1:07-CV-01033 (JDB) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISTRICT OF COLUMBIA, MAYOR ADRIAN M. FENTY, AND BOARD OF TRUSTEES, UNIVERSITY OF THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

This Court should dismiss plaintiff's second amended complaint against defendants District of Columbia, Mayor Adrian M. Fenty, and the Board of Trustees, University of the District of Columbia, for the following reasons:

1.      Plaintiff fails to state a claim under Title VII (42 U.S.C.S. § 2000e et seq.), the Age Discrimination in Employment Act (29 U.S.C.S. § 621 et seq.), the Americans with Disabilities Act (42 U.S.C.S. § 12101 et seq.), the Rehabilitation Act (29 U.S.C.S. § 791 et seq.), the D.C. Human Rights Act (D.C. Code Ann. § 1-2512 (1981), or the Equal Pay Act (29 U.S.C. § 206(d) (1)), on the basis of gender, disability, age, retaliation, hostile environment or deprivation of equal pay;

2.      Even if plaintiff could establish viable claims on the aforementioned bases under the Acts raised, he has failed to exhaust administrative remedies as required and cannot establish a continuing violation that would allow him to maintain his claims;

3.    On information and belief, plaintiff has failed to provide proper notice pursuant to D.C. Code § 12-309 of his claims under the District of Columbia Human Rights Act; and

4.    Plaintiff's claims against Mayor Fenty are precluded by vicarious liability doctrine.

As a result, judgment should be entered in favor of defendants and the complaint dismissed.

## I.  FACTUAL BACKGROUND

Plaintiff contends that in December 2000 he was asked to move from his then position as an accountant, to another accountant position for which he would receive a pay raise from $44,000.00 to $58,000.00 per annum.  Complaint at ¶¶ 10-12.  Plaintiff changed positions as requested but the pay raise did not occur.  Complaint at ¶ 13.  In August 2001, plaintiff contacted management to complain.  Complaint at ¶ 15.  In June 2002, plaintiff's areas of responsibility were given to a co-worker.  Complaint at ¶ 16.  In July 2002, plaintiff wrote an internal letter of complaint.  Complaint at ¶ 17.  His duties were reduced.  Complaint at ¶ 18.  In October 2002, by counsel, plaintiff submitted another internal letter of complaint.  Complaint at ¶ 21.  In October 2003, plaintiff's pay was substantially increased but still not to the amount originally promised, or equal to the level of compensation plaintiff believed his female, younger and non-disabled counterparts received.  Complaint at ¶¶ 22-23.  Plaintiff claims he was subjected to retaliation for, among other things, complaining about his pay, treatment and retaining an attorney.  Complaint at count V.  In July 2005, plaintiff finally filed a charge of discrimination with the U.S. EEOC.  Complaint at ¶ 2.

On or about March 14, 2007, the EEOC issued plaintiff a right to sue letter.  *Id.*  On or about June 11, 2007, plaintiff brought the above-captioned matter against the defendants which

contains 4 counts seeking:  damages for pain and suffering in the amount of $300,000 per count (total $1.2 million), the full salary plaintiff believes he is entitled to, back pay, liquidated damages of 2 times back pay, punitive or liquidated damages generally, lost retirement benefits, and attorneys' fees and costs.  Docket Entry No. 1.

On July 31, 2007, defendants moved to dismiss.  *Id*. at 2-4.  On September 6, 2007, plaintiff opposed the motion to dismiss and amended his complaint, mooting defendants' motion to dismiss.  *Id*. at 7-8.  The first amended complaint added Counts 6-10 to the complaint, and seeks an additional $300,000.000 for each of the new counts among other measures of damage, costs and fees.

On October 9, 2007, defendants again moved to dismiss.  *Id*. at 11.  On October 22, 2007, plaintiff filed his Opposition.  *Id*. at 12.  On November 16, 2007, plaintiff moved for leave to amend his complaint a second time.  *Id*. at 13.  Defendants did not oppose this motion.  On December 6, 2007, the Court granted the motion, accepted the second amended complaint for filing, thus mooting defendants' second motion to dismiss, and ordered the Defendants to file a response to the complaint by December 20, 2007.  *Id*. at 14.  The second amended complaint includes additional facts intended to support plaintiff's claims.

No response was filed and on January 2, 2008, the Court ordered the defendants to file their response on or before January 9, 2008.  Minute Order 1/2/08.

On January 9, 2008, defendants moved for extension of time to file their response to the second amended complaint.  Docket Entry No. 16.  On January 10, 2008, the Court granted the Motion and extended the response deadline to January 14, 2008.  Minute Order 1/20/08.  Defendants now file their response to the second amended complaint.

## II.  <u>STANDARD OF REVIEW</u>

3

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where claims are not stated adequately, or are not supported by a showing of a set of facts consistent with the allegations in the complaint.

*Bell Atlantic v. Twombly,* 127 S.Ct. 1955 (2007), is illuminating on what the U.S. Supreme Court has recently said plaintiffs must plead in order to state a claim:

Factual allegations must be enough to raise a right to relief above the speculative level…. "[t]he pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legal cognizable right of action (citations omitted)…." *Id*. at 1964.

Rule 8(a) "contemplates the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it (citations omitted)." *Id*. at 1965, n. 3.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court (citations omitted).'" *Id*. at 1966.

"[I]n practice, a complaint…must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory (citations omitted)." *Id*. at 1969.

"[O]nce a claim has been stated adequately, it may be support by showing any set of facts consistent with the allegations in the complaint (citations omitted)." *Id*.

Under Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Atkins v. Industrial Telecommunications Assn.*, 660 A.2d 885, 887 (1995). Assuming all of the allegations in the instant complaint are true, the Court should dismiss the complaint.

### III.  ARGUMENT

### A.  Plaintiff Fails to State a Claim.

### 1.  Plaintiff Fails to State a Claim Under Title VII.

At Count I, Plaintiff alleges that he has been discriminated on the basis of his gender, male, by defendants "paying Plaintiff less than similarly placed females performing work requiring the same level of skills, responsibilities and efforts."  Yet, for the reasons that follow, plaintiff cannot establish a *prima facie* case of gender discrimination and his claim must fail.

*Regan v. Grill Concepts-D.C., Inc*., 338 F. Supp. 2d 131 (D.D.C. 2004) makes clear that the requirements for a *prima facie* case of discrimination are flexible and vary depending on the type of case.  To establish a claim of gender discrimination, however, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.   Plaintiff cannot establish prong (2) because he never suffered an adverse employment action.  Thus, cannot establish a prima facie case of gender discrimination and his claim must fail.

Under *Vance v. Chao*, 496 F. Supp. 2d 182 (D.D.C. 2007), an adverse action is an action that produces an injury or harm such that it "might well" dissuade a reasonable worker from making or supporting a charge of discrimination.  Further, *Murfree-Fleming v. Billington*, 2007 U.S. Dist. LEXIS 51273 (D.D.C. 2007), states that an adverse action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." "Absent a reduction in pay or benefits, only those actions creating "materially adverse consequences affecting the terms, conditions, or privileges of her employment opportunities"

amount to adverse actions.  *Id.  See also Forkkio v. Powell*, 353 U.S. App. D.C. 301, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002).

None of plaintiff's asserted facts constitutes an "injury or harm" as required, and none of his complaints constituted a significant change in employment status—not the alleged failure to receive a pay increase in exchange for taking a Senior Accountant position, failure to receive "close out assignments," alleged problems with his computer, the supervisor, Ms. Gaines' alleged refusal to "help him because he got a lawyer, the "alleged failure to receive a bonus as similarly situated employees did, and allegedly having his duties reduced and some of the duties he retained being given to a newly hired consultant who is paid "substantially more" than plaintiff.  Plaintiff cannot establish prong (2) of the *prima facie* case of gender discrimination.

In addition, plaintiff's pay and benefits were never reduced.  On the contrary, the complaint states that plaintiff's pay has not been reduce but has been increased at least twice, just not to the level he believes is commensurate with the Senior Accountant position.  *See e.g.*, para. 22 and 23, Complaint.

As a result, there has been no adverse action, and plaintiff, thus, fails to set forth the second prong of the required showing to establish gender discrimination.

### 2.  Plaintiff Fails to State a Claim of Either Actual or Perceived Disability Under the Americans with Disabilities Act and Rehabilitation Act

At Counts II, IV, VI, and VII, the complaint states that Plaintiff is blind in one eye and diabetic.  Complaint at ¶ 5.  These facts are poignant.  However, the complaint fails to establish

that Plaintiff is disabled under the ADA and Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. [1]

Plaintiff's claims are without merit.

The Americans with Disabilities Act ("ADA"), 29 U.S.C. § 794 (d), protects only those

"qualified individuals with a disability" who, with or without reasonable accommodation, can

perform the essential functions of the positions they hold.  42 U.S.C. § 12111(8); *Weigert v.*

*Georgetown Univ.*, 120 F. Supp. 2d 1, 6 (D.D.C. 2000).

In relevant part, the ADA defines disability as "a physical or mental impairment that

substantially limits one or more of [a person's] major life activities." 42 U.S.C. § 12102(2)(A),

(C); *Weigert, supra*.  According to the Equal Employment Opportunity Commission,

"substantially limits" means:  unable to perform a major life activity that the average person in

the general population can perform; or significantly restricted as to the condition, manner or

duration under which an individual can perform a particular major life activity as compared to

the condition, manner, or duration under which the average person in the general population can

perform the same major life activity.  29 C.F.R. § 1630.2(j)(l)(i)-(ii) (2002); *Smith v. District of*

*Columbia*, 271 F. Supp. 2d 165 (D.D.C. 2003).

29 C.F.R. § 1630.2(j)(2)(i)-(iii) (2002) instructs that the following be taken into

consideration when assessing whether an impairment substantially limits a major life activity: (1)

the nature and severity of the impairment; (2) the duration or expected duration of the

impairment; and (3) the permanent or long term impact, or the expected permanent or long-term

impact of or resulting from the impairment.  The complaint does not sufficiently specify ways in

which one or more of plaintiff's major life activities are limited as required.

---

[1] The ADA and Rehabilitation Act identically define the term "disability."  *Duncan v. Harvey*, 479 F. Supp. 2d 125 (D.D.C. 2007).  The standards for determining a violation of the Rehabilitation Act are the same as those applied under the ADA.  *LaCorte v. O'Neill*, 139 F. Supp. 2d 45 (D.D.C. 2001).

Plaintiff's being blind in one eye and diabetic are not *per se* disabilities under the ADA. "Considering whether a person is disabled is an individualized inquiry. A mere diagnosis of a disease does not mean a person is disabled." *Smith, supra*, at 169.

In *Smith*, although plaintiff had diabetes, the court noted:

> "the Supreme Court has held that considering whether a person is disabled is an individualized inquiry, and a mere diagnosis of a disease does not mean a person is disabled. *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 483-84, 144 L.Ed. 2d 450, 119 S.Ct. 2139 (1998). If this were the case, almost all diabetics would be considered disabled because if they did not test their blood and administer insulin, their condition would affect their major life activities. *Id*. Therefore, in order to be termed a disability, Smith's diabetes must be shown to have substantially limited her major life activities."

*Smith, supra,* at 169.

To establish a *prima facie* case of disability discrimination, Plaintiff Johnson must meet this burden. He fails to do so.

In addition, Plaintiff fails to establish a *prima facie* case of "perceived" disability discrimination because he fails to allege the necessary facts.

In order to proceed under a "perceived disability" theory (*see e.g.* Complaint at ¶¶ 94-103), Plaintiff must show that: (1) he was perceived to have a physical impairment and (2) the impairment was perceived to "substantially limit one or more of [his] major life activities." *Siragy v. Georgetown Univ*., 1999 U.S. Dist. LEXIS 21021 (D.D.C. 1999).

Plaintiff has not shown that he was perceived to have a physical impairment. He states in the complaint that "Defendants knew Plaintiff was blind in one eye and was diabetic." Complaint at ¶ 95. He fails to establish, however, how Defendants would, in fact, have received notice that Plaintiff suffered from these conditions. These are not conditions that are necessarily apparent to the naked eye. Moreover, Plaintiff has not asserted that he provided documentation from his physicians regarding his alleged conditions, describing related symptoms or behaviors

and limitations on his work performance that might occur as a result.   In sum, there is no evidence that Defendants were on notice that Plaintiff suffered from these conditions.

In addition, Plaintiff states Defendants regarded him as disabled because they knew he "would sometimes fall asleep at his desk."  Complaint at ¶ 95.  Plaintiff fails anywhere in the complaint to establish that Defendants knew that his sleeping at work was the result of being blind in one eye or diabetic, or that Defendants regarded his being blind in one eye and diabetic as the cause of his practice of sleeping at work.  Falling asleep at work on a regular basis is not *per se* evidence of a disability.  There would be no reason for anyone to assume that Plaintiff's habit of falling asleep at work was a symptom or by-product of being blind in one eye or diabetic (assuming that management was aware that Plaintiff is blind in one eye and diabetic) absent medical documentation.

Plaintiff has not shown that his being blind in one eye and diabetic were perceived to "substantially limit one or more of [his] major life activities.  In fact, Plaintiff stated that management gave him "the top score on evaluations in 2005"  and "consistent…"exceeds expectation" evaluations….""  Complaint at ¶5 and 8.  There is no evidence that Plaintiff was regarded as being restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities.  The only jobs Plaintiff raises in the complaint are accounting positions similar to or identical to the job he now has.  *See e.g.* Complaint at ¶ 10 and 14. His chief claim is his repeated assertion made throughout the Complaint that he is being underpaid.

To establish a *prima facie* case of disability discrimination under a theory of perceived disability, Plaintiff must make the required showing.  As demonstrated above, he fails to do so and his claim must be dismissed.

### 3.    Plaintiff Fails to State a Claim Under the ADEA.

Similarly, plaintiff fails to state a claim at Count III under the Age Discrimination in Employment Act ("ADEA"), and those claims must also be dismissed.

Under *Dobbs v. Roche*, 329 F. Supp. 2d 33 (D.D.C. 2004), to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision. Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. The burden of establishing a prima facie case of disparate treatment is not onerous.

For the reasons state above, plaintiff never suffered an adverse action and, thus, cannot establish prong (3) of the required showing.  His claims are without merit.

### 4.    There Was No Retaliation in This Case.

Plaintiff again fails to state a claim of retaliation at Count VIII, and those claims must be dismissed.

"[I]n order to establish a *prima facie* case of retaliation, plaintiff must demonstrate (1) that she engaged in protected activity and that (2) as a consequence (3) her employer took a materially adverse action against her."  *Vance, supra.*

At paragraph 10, Complaint, plaintiff states that in December 2000 he was asked to move from his position in the Cost Accounting area to a newly created position as a Senior Accountant in the General Accounting area.

At paragraph 12, Complaint plaintiff states that he was promised a pay increase <u>as an incentive to move into the new position</u>.  (Emphasis added.)

Although plaintiff subsequently alleges that in August 2001 he complained to management about his failure to receive the pay increase (para. 15), in July 2002 he sent a letter concerning "unfair" employment practices (para. 17), and, instead of pursuing EEO charges, in October 2002 his then attorney wrote a letter to University administration regarding "unfair pay practices (para. 21)," no where in the Complaint does plaintiff establish that he contemporaneously told anyone that he complaining during this period because he was being paid less than a female or anyone else because of his membership in a protected class and was, thus, being discriminated against on any basis.

The complaint also does not state that either of the aforementioned letters mentioned the alleged concerns plaintiff had about receiving "close out assignments" in 2002 (para. 16), problems with his computer apparently in 2002 (para. 19 and 20), and linked them to claimed discrimination or retaliation.  If either letter had mentioned these claims and stated that they occurred as a result of discrimination and/or constituted retaliation, plaintiff surely would have said this in the complaint and may well have provided the letters to the Court as evidence before this point.

Later in the complaint, plaintiff alleges that Ms. Gaines, the official to which plaintiff's unit reported, told Plaintiff in 2005 that she would not help him because he got a lawyer (para. 123)."  (It is unclear precisely which help plaintiff is claiming was withheld.)  Plaintiff further contends that at some unidentified point plaintiff did not receive a bonus as similarly situated employees did.  *Id*.  (It is unclear precisely what plaintiff means when he uses the term "similarly situated.")  Plaintiff further alleges that at some unidentified point his duties were reduced and

11

some of the duties he retained were given to a newly hired consultant who is paid "substantially more" than plaintiff.  *Id*.

On the contrary, the true reason for plaintiff's concern, the oral complaints he made, the letters he subsequently sent, and his retaining a lawyer is clear:  he was not given an allegedly promised pay increase although he took on a Senior Accountant position.  Accordingly, plaintiff was not engaging in protected activity and making claims of alleged discrimination when he complained about his pay and obtained a lawyer to pursue that concern at any point prior to filing his EEO charge in 2005.

Title VII does not cover every grievance that an employee might have in the workplace regarding pay.  It covers a claimant protesting discrimination against them in the matter of pay, not the failure of an employer to increase an employee's pay after they assumed on a new position that was either agreed to, or should be presumed to, command higher pay.  "Title VII prohibits an employer from discriminating because an employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.  42 U.S.C. § 2000e-3."  *McIntyre v. Peters*, 460 F. Supp. 2d 125, 134 (D.D.C. 2006). "[N]ot every complaint garners…protection under Title VII."  (*Broderick v. Donaldson*, 369 U.S. App. D.C. 374, 437 F.3d 1226, 1232 (D.C. Cir. 2006)).

"As the D.C. Circuit has recently explained, "[w]hile no 'magic words' are required" to mark an exchange as protected activity, "the complaint must in some way allege unlawful discrimination…" (*Id*.; *see also Pope v. ESA Servs., Inc*., 406 F.3d 1001, 1010 (8th Cir. 2005)). *McIntyre, supra*.  In this case, for the reasons demonstrated above, Plaintiff's complaints about his pay and treatment were evidently never linked to discrimination until he belatedly filed his

12

charge with the EEOC in 2005. Therefore, he cannot establish the first prong of the necessary

showing to establish retaliation, i.e., that he was engaging in protected activity because he was

not.

Likewise, again, plaintiff cannot show that the employer took an adverse action against

him. An adverse action is an action that produces an injury or harm such that it "might well"

dissuade a reasonable worker from making or supporting a charge of discrimination. *Vance,*

*supra.* Further, *Murfree-Fleming v. Billington*, 2007 U.S. Dist. LEXIS 51273 (D.D.C. 2007),

states that an adverse action requires "a significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing significant change in benefits." "Absent a reduction in pay or benefits, only those

actions creating "materially adverse consequences affecting the terms, conditions, or privileges

of her employment opportunities" amount to adverse actions. *Id. See also Forkkio v. Powell*,

353 U.S. App. D.C. 301, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002).

Accordingly, none of plaintiff's asserted facts constitutes an "injury or harm" as required;

none of the events he complains of constituted "a significant change in employment status…."

None of his complaints--the alleged failure to receive "close out assignments," alleged problems

with his computer, Ms. Gaines' alleged refusal to "help him because he got a lawyer, "his

alleged failure to receive a bonus as similarly situated employees did, and allegedly having his

duties reduced and some of the duties he retained being given to a newly hired consultant who is

paid "substantially more" than plaintiff—constituted a significant change in employment status.

Plaintiff's claims of retaliation are unfounded.

In addition, plaintiff's pay and benefits were never reduced. On the contrary, the

complaint states that plaintiff's pay has not been reduce but has been increased at least twice, just

not to the level he believes is commensurate with the Senior Accountant position. *See e.g.*, para. 22 and 23, Complaint.

As a result, there has been no adverse action, and plaintiff, thus, fails to set forth the second prong of the required showing to establish retaliation.

Finally, plaintiff must establish that his damages were caused by the alleged adverse action. As stated, plaintiff was not engaging in protected activity and there was no adverse action imposed. Plaintiff evidently does not have direct evidence of causation and his retaliation claim must fail.

To establish a causal link as required, Plaintiff must make a *prima facie* showing that the adverse actions would not have occurred "but for" his engaging in the protected activity. (*See Gregg v. Hay-Adams Hotel*, 942 F. Supp. 1, 8 (D.D.C. 1996)). "Because causation can be difficult to prove, a plaintiff may raise a presumption of causation by showing that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter. (*Mitchell v. Baldridge*, 245 U.S. App. D.C. 60, 759 F.2d 80, 86 (D.C. Cir. 1985)). As defendant correctly notes, a plaintiff wishing to rely on this presumption must allege that the protected activity and the adverse action occurred very close in time." *Vance, supra*.

Because plaintiff was not engaging in protected activity and has not set forth any facts which demonstrate that he suffered adverse actions, he cannot establish causation and his claim for retaliation fails.

### 5. Plaintiff Fails to State a Claim Under the Equal Pay Act.

Plaintiff's fails to state a claim under the Equal Pay Act, and his claim should be dismissed.

Under *Wiggins v. Powell*, 2005 U.S. Dist. LEXIS 3984, 34-35 (D.D.C. 2005), the Equal Pay Act "prohibits payment of unequal wages for equal work on the grounds of sex, unless the difference is justified by one of four enumerated defenses: a seniority system, a merit system, a system that measures pay by quality or quantity of production, or any other factor not based on sex."

For reasons set forth above, plaintiff did not link his complaints about his pay to his gender until 2005.  His complaints were originally based on the fact that he took a Senior Accountant position in the year 2000, but allegedly never received the promised pay increase.

It was only after plaintiff filed his EEOC complaint in 2005, and subsequently filed this lawsuit in June 2007, that he linked his gender to his complaints about pay.  Accordingly, plaintiff cannot claim in good faith "payment of unequal wages for equal work on the grounds of sex."  His claims should be dismissed.

### B. Plaintiff Has Failed to Exhaust Administrative Remedies and Cannot Establish a Continuing Violation.

Plaintiff does not establish the above-described claims of discrimination under Title VII, the ADA, ADEA, and theories of retaliation.  Even if plaintiff could establish such claims, however, they would be barred because he has failed to exhaust administrative remedies as required and cannot establish a continuing violation.

### 1. Plaintiff Has Failed to Exhaust Administrative Remedies.

It is axiomatic that plaintiff must exhaust his administrative remedies before filing suit under Title VII.  *AMTRAK v. Morgan*, 536 U.S. 101, 128, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002) ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period -- 180 or 300 days -- set forth in 42 U.S.C. § 2000e-5(e)(1).")  It is equally well-settled that claims of disparate treatment

15

are governed by Title VII principles.  *See e.g.*, *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 158 (D.D.C. 2002).

With regard to the December 2000 change in position, the complaint reveals that plaintiff contacted management in some fashion (Complaint at ¶15), but he did not file a charge of discrimination [2] and, thus, did not exhaust his administrative remedies.  This contact did not invoke plaintiff's administrative remedies.  *Thrash v. Library of Cong.*, 2006 U.S. Dist. LEXIS 9988 (D.D.C. 2006)(citations omitted).  As a result, any claims related to plaintiff's December 2000 position change are time barred.  They may not be revived using the continuing violation theory (see discussion at c. below).

Concerning the circa 2002 alleged reduction of duties (para. 18), the complaint likewise states that plaintiff wrote subsequent letters to management (Complaint at ¶¶ 17 and 21).  His attorney wrote one of the letters.  *Id*.  Yet, as before, plaintiff did not file a charge of discrimination, again failing to exhaust his administrative remedies.  As a result, any claims related to plaintiff's June 2002 alleged reduction of duties are time barred.  They cannot be resurrected using continuing violation doctrine (see discussion at c. below).

Other than making assorted contacts with his management, from December 2000 when plaintiff changed positions, to June 2002 when he suffered the alleged adverse action of reduction of duties, plaintiff took no action, allowing more than 2 years to lapse.  From June 2002, when plaintiff sustained the alleged reduction of duties, to July 2005, when plaintiff finally filed the instant EEO complaint, plaintiff again did nothing to exhaust his administrative remedies, allowing 3 years to lapse.  Accordingly, plaintiff never availed himself of the

---

[2] The University of the District of Columbia also has an EEO policy for employees that plaintiff might have availed himself of to exhaust his administrative remedies.

administrative process regarding the December 2000 alleged employment action, and did not begin to avail himself of his administrative remedies on the June 2002 employment action until July 2005. *Thrash, supra*, at 12 (citations omitted).

In this connection there is no basis for Plaintiff to invoke the doctrine of equitable estoppel. "Equitable estoppel in the statute of limitations context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time…." *Cristwell v. Veneman*, 224 F. Supp. 2d 54, 58 (D.D.C. 2002). In this instance, Plaintiff sets forth no facts alleging Defendants' active steps to prevent him from timely filing employment complaints with the appropriate administrative bodies, and evidently cannot do so. Plaintiff's failure to timely act was fatal and his claims are barred. "Dismissal results when a plaintiff fails to exhaust administrative remedies."

### 2. There is No Continuing Violation in this Case.

As stated, plaintiff took no action on the December 2002 position change. There is no causal connection between that event and the June 2002 alleged reduction of duties. Those incidents occurred two years apart and according to the complaint there were no alleged adverse employment actions or acts of retaliation in between. [3]

The continuing violation theory does not apply. The doctrine was historically applicable in instances where a claimant filed an administrative charge, thereby exhausting remedies on the subject employment action, and after the filing incidents took place that might constitute additional adverse actions or retaliation.

---

[3] *Murfree-Fleming v. Billington*, 2007 U.S. Dist. LEXIS 51273 (D.D.C. 2007) states that an adverse action requires "a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing significant change in benefits." *Brown*, 199 F.3d at 456 (emphasis added). Absent a reduction in pay or benefits, *only* those actions creating "materially adverse consequences affecting the terms, conditions, or privileges of her employment opportunities" amount to adverse actions. *Id.* at 457. "Purely subjective injuries, such as dissatisfaction with a reassignment . . . are not adverse actions." *Forkkio v. Powell*, 353 U.S. App. D.C. 301, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002).

Under the continuing violation doctrine, claimant would not then have to exhaust administrative remedies by filing another charge for each successive incident, and those events would be joined in the original administrative complaint as "sufficiently related." *Keeley v. Small,* 391 F. Supp. 2d 30, 40 (D.D.C. 2005)(citing *Morgan, supra*, 536 U.S. at 105).

In *Morgan,* the U.S. Supreme Court largely rejected the continuing violation theory, holding that claimants must exhaust administrative remedies for each subsequent event complained of that occurs after they originally filed a charge and exhausted remedies. *Keeley, supra,* at 41 *(*citing *Morgan, supra,* 536 U.S. at 108 (citations omitted)).

*Morgan* establishes that the only exception to this rule is where a claimant alleges a hostile environment claim. "A charge alleging a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id*., 536 U.S. at 128.

The complaint does not set forth facts that would establish a hostile environment theory, although he alleges such theory in Count IX.

*Rattigan v. Gonzales*, 2007 U.S. Dist. LEXIS 39227, 54-56 (D.D.C. 2007) provides:

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117 (internal quotation marks omitted). The workplace becomes "hostile" for purposes of a Title VII claim only when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." … *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); *accord Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). To make out a *prima facie* case of hostile work environment, plaintiff must also show that the harassment was based on plaintiff's membership in a protected class, and that his employer knew or should have known of the harassment and failed to take any remedial action. *See Davis v. Coastal Int'l Sec., Inc*., 348 U.S. App. D.C. 375, 275 F.3d 1119, 1122-23 (D.C. Cir. 2000) (citing *Yeary v. Goodwill Industries- Knoxville*, 107 F.3d 443, 445 (6th Cir. 1997)); *see also Hussain v. Nicholson*, 369 U.S. App. D.C. 247, 435 F.3d 359, 366 (D.C. Cir. 2006). While a plaintiff is not required to plead a prima

18

facie case of hostile work environment in the complaint, the alleged facts must be able to support such a claim. *See Sparrow*, 216 F.3d at 1114. In determining whether an environment is sufficiently hostile or abusive to support a claim, courts must look at "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787-88 (1998) (quoting *Harris*, 510 U.S. at 23). "[N]ot all abusive behavior, even when it is motivated by discriminatory animus, is actionable." *Stewart*, 275 F.3d at 1133 (quoting *Barbour v. Browner*, 337 U.S. App. D.C. 50, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999). The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (emphasis added). This standard is designed to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* (quoting *Oncale*, 523 U.S. at 80).

The complaint attempts to demonstrate a hostile environment that could form the basis for a viable continuing violation claim by alleging the following facts:

The complaint indicates that in 2000, plaintiff voluntarily accepted a change in position in exchange for a promise of more pay (para. 10 and 11). The complaint alleges that the pay increase did not take place and plaintiff complained about that allegation in August 2001 (para 13 and 15). The complaint further alleges that in July 2002 plaintiff sent a letter concerning "unfair" employment practices (para. 17), and, instead of pursuing EEO charges, in October 2002 his then attorney wrote a letter to University administration regarding "unfair pay practices (para. 21)." At some identified point in 2002, plaintiff also says he was denied "close out assignments" (para. 16), and had problems with his computer. In 2005, plaintiff claims that Ms. Gaines refused to help plaintiff because he got a lawyer. Plaintiff further contends that at some unidentified point plaintiff did not receive a bonus as similarly situated employees did. Plaintiff further alleges that at some unidentified point his duties were reduced and some of the duties he retained were given to a newly hired consultant who is paid "substantially more" than plaintiff. *Id.*

By pleading these acts that, among other things, do not rise to the level of adverse actions and are spread out over five years' time, plaintiff does not demonstrate a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

When the continuing violation theory was in wide use, it would have applied only to claims arising after remedies are exhausted and an administrative complaint or charge was filed. The doctrine would not have been used as a means to "grandfather in" claims occurring prior to the filing of the administrative claim that had never been acted upon. Plaintiff may not do this. There is, as a result, no hostile environment claim or continuing violation that can be maintained in this case.

In sum, although plaintiff's complaints originated in 2001, he never instituted nor exhausted his administrative remedies prior to 2005 when he finally filed his EEO charge, and there is no viable hostile environment claim or continuing violation alleged. Under *Morgan*, since there is no hostile environment claim the continuing violation theory does not apply. Further, plaintiff's claims of discrimination may not be established. He cannot show the required *prima facie* elements, and his claims are time barred.

**C.    Plaintiff Has Failed to Provide Proper Notice Pursuant to D.C. Code § 12-309**

Plaintiff has apparently failed to satisfy the mandatory notification requirements of D.C. Code § 12-309 (2005) in regard to his District of Columbia Human Rights Act ("DCHRA") claims against the District:

> **An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.**

D.C. Code § 12-309 (2005 ed.).

Although plaintiff was not required to file a § 12-309 notice for his federal claims, he was required to file such notice prior to filing suit on his DCHRA claims. *See Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 158 (D.D.C. 2002). As a result, plaintiff's DCHRA claims at Count 5 or elsewhere in the complaint (*e.g*., at Counts 8 and 9 to the extent that those counts contemplate DCHRA claims) are barred and must be dismissed.

As indicated by a long line of cases, § 12-309 is to be strictly construed. *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978); *Toomey v. District of Columbia*, 315 A.2d 565, 566 n.1 (D.C. 1974); *District of Columbia v. World Fire & Marine Ins. Co.*, 68 A.2d 222, 225 (D.C. 1949); *Boone v. District of Columbia*, 294 F. Supp. 1156, 1157 (D.D.C. 1968). "[C]ompliance with the statutory notice requirement is mandatory," and is a "condition precedent to filing a suit against the District." *Hill v. District of Columbia*, 345 A.2d 867, 869 (D.C. 1975); *Gwinn v. District of Columbia*, 434 A.2d 1376 (D.C. 1981).

In order for notice to comport with D.C. Code § 12-309, four items of information must be provided. The District must be apprised of "the approximate time, place, cause and circumstances of the injury or damage." *Allen v. District of Columbia*, 533 A.2d 1259, 1261-62 (D.C. 1987).

Counsel could locate no record of receiving any § 12-309 notice from plaintiff concerning this lawsuit. Should counsel locate such notice or learn of additional information in this regard, defendants will so notify the Court.

Accordingly, plaintiff has apparently not perfected his DCHRA claims. Judgment should be entered, therefore, in favor of defendants.

### D.    Mayor Fenty Is Not Vicariously Liable

Plaintiffs' complaint should be dismissed as to Mayor Fenty because be cannot be held vicariously liable under Title VII. *See e.g.*, *Russ v. Van Scoyoc Assocs.*, 59 F. Supp. 2d 20, 24 (D.D.C. 1999) (Title VII specifically prohibits acts of discrimination by an "employer," and makes a clear distinction between "persons" and "employers." 42 U.S.C. § 2000e-2(a)). "The Court of Appeals' holding in *Gary v. Long, supra*, [4] excluding individual liability from the definition of "employer" under Title VII, is applicable as well to the ADA's definition of "employer."" *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997) [5]

WHEREFORE, for the reasons stated above, defendants request that judgment be entered in their favor and the subject complaint is dismissed.

Date:  January 14, 2008                    Respectfully submitted,

---

[4] 313 U.S. App. D.C. 403, 59 F.3d 1391, 1399 (D.C. Cir.), *cert. denied*, 516 U.S. 1011, 133 L. Ed. 2d 493, 116 S. Ct. 569 (1995).

[5] Also, by analogy, under the doctrine of *respondeat superior* a supervisory official is not liable for the alleged torts of his subordinate employees, for which only the master (here, the District) is liable. *Robertson v. Sichel*, 127 U.S. 507 (1988). *See also Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

The United States Court of Appeals for the District of Columbia Circuit has set forth this maxim, stating:

"... a superior officer is not subject to vicarious liability for the torts of his subordinates, whether at common law or under § 1983, because they are both servants of the same employer.... "

*Carter v. Carlson*, 447 F.2d 358, 370, n. 39 (D.C. Cir. 1971), *rev'd on other grounds, sub nom District of Columbia v. Carter*, 409 U.S. 418 (1973). The court explained that,

"…of course, Carlson's master for this purpose is his employer, the District, and not the supervisory officers who are in fact his fellow employees."

PETER NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/Kimberly Matthews Johnson
KIMBERLY MATTHEWS JOHNSON, #435163
Chief, General Litigation Sec. I

/s/Michelle Davy
MICHELLE DAVY, #454524
Assistant Attorney General
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6608
(202) 727-3625 (fax)
E-Mail: michelle.davy@dc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 14th day of January, 2008, that a copy of the foregoing

District of Columbia, Mayor Adrian M. Fenty, and Board of Trustees, University of the District

of Columbia's Memorandum of Points and Authorities in Support of Motion to Dismiss Second

Amended Complaint was delivered by first class mail postage prepaid or ECF, to:

Rebecca N. Strandberg
8607 Second Avenue, Suite 405A
Silver Spring, MD  20910

/s/Michelle Davy
Michelle Davy
Assistant Attorney General

---

*Id.,* citing *Robertson v. Sichel, supra.*

23

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PAUL JOHNSON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | )    **Civil No. 1:07-CV-01033 (JDB)** |
| v. | ) |
|  | ) |
| DISTRICT OF COLUMBIA, et al., | ) |
|  | ) |
| Defendants. | ) |

## ORDER

UPON CONSIDERATION of defendants District of Columbia, Mayor Adrian M. Fenty, and Board of Trustees, University of the District of Columbia's Motion to Dismiss Second Amended Complaint, supporting Memorandum of Points and Authorities, and the entire record herein, it is by the Court this _____ day of _____, 2008, hereby **ORDERED**

that the defendants District of Columbia, Mayor Adrian M. Fenty, and Board of Trustees, University of the District of Columbia's Motion to Dismiss Amended Complaint be, and hereby is **GRANTED**; and it is hereby **ORDERED**

that the plaintiffs' Complaint be, and hereby is **DISMISSED** with prejudice.


_____
JUDGE

cc:
Michelle Davy, Esq.
Office of the Attorney General for the District of Columbia
Sixth Floor South
441 4th Street, N.W.
Washington, D.C.  20001

Rebecca N. Strandberg
8607 Second Avenue, Suite 405A
Silver Spring, MD  20910

24