UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Paul Johnson, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. **1:07-CV-01033 (JDB)** |
| ) | |
| District of Columbia, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF PAUL JOHNSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Comes now Plaintiff Paul Johnson, by and through Counsel Rebecca N. Strandberg and Rebecca N. Strandberg & Associates, P.A. and hereby files his Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") and states as reasons the following:

**INTRODUCTION**

This case arises from Plaintiff's employment as an accountant in the Finance Office of the University of the District of Columbia ("UDC"). In his Second Amended Complaint, Plaintiff alleges the following:

1. Pay discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (Count I);

2. Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (Counts II and VI);

3. Discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (Count III);

4. Discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. (Counts IV and VII);

5. Discrimination in violation of the D.C. Human Rights Act, D.C. St. §§ 2-1401.01 et seq. (Count V);

6. Retaliation (Count VIII);

7. Hostile work environment based on perceived or actual disability (Count IX); and

8. Violation of the Equal Pay Act, 29 U.S.C. § 206(d) (Count X).

*Second Amended Complaint* ("*SAC*").

As explained in greater detail below, Defendants' Motion to Dismiss is without merit. Throughout the Motion, Defendants continuously confuse the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure with the "summary judgment" standard established by Rule 56. Of course, Rule 12(b)(6) applies a much less strenuous standard to complainants – a standard that Plaintiff easily meets. Further, although the Second Amended Complaint alleges a litany of "adverse actions" taken against Plaintiff, Defendants curiously argue that *no* adverse actions have been alleged. Plaintiff also can refute Defendants' contentions that he failed to exhaust administrative remedies, failed to timely assert his claims, and failed to comply with the notice provisions set forth in the D.C. Code. Finally, Defendants' arguments in favor of dismissing Mayor Fenty from the case are erroneous.

## FACTS ALLEGED IN SECOND AMENDED COMPLAINT

Plaintiff, who has worked for UDC for more than seventeen (17) years, is the oldest and longest-serving accountant in the Finance Office. *SAC*, ¶¶ 3-4, 6, 9. He also is blind in one eye and has insulin-dependent diabetes. Id. ¶¶ 4-5. These conditions sometimes cause him to work slowly and negatively impact his ability to drive. Id. ¶ 5. Further, the latter condition negatively affects his metabolism and often causes him to fall asleep with little to no notice – sometimes at

his desk and sometimes in meetings. Id. Nonetheless, Plaintiff is qualified to do his job. In fact, he has consistently received "exceeds expectations" ratings on employee evaluations. Id. ¶ 8. Moreover, he holds an associates degree in accounting – a qualification that, upon information and belief, some of his co-workers lack. Id. ¶ 14.

Plaintiff contends in the Second Amended Complaint that, due to his gender, disability/perceived disability, age, and complaints about discrimination, his female departmental supervisor (id. ¶ 7) and others associated with Defendants took, inter alia, the following adverse actions against him:

1. Despite his seniority, experience, education, and positive reviews, Defendants made Plaintiff the lowest paid accountant at the Finance Office of UDC. Id. ¶ 9.

2. Defendants induced Plaintiff to transfer out of his position in the Cost Accounting area to a new position by promising to increase his salary from $44,000 to $58,000. Id. ¶¶ 10-12. Although Plaintiff moved into the new position, he did not receive the promised increase. Id. ¶ 13.

3. After the transfer, Defendants gave Plaintiffs' former job to a younger female. Id. ¶ 14. Upon information and belief, this replacement did not have an Associates degree – as Plaintiff did. Id. Further, upon information and belief, the replacement worker's skill level was equal or lower to that of Plaintiff. Id. Nonetheless, she was given a salary of ***$66,000***. Id.

4. Plaintiff complained to supervisors that he was not being compensated at a rate commensurate with his experience and in line with his peers. Id. ¶ 15. Defendants assured Plaintiff that the pay inequities would be remedied, but they did not fulfill their promises. Id.

5. After Plaintiff orally complained about the pay inequities, he was marginalized by his supervisors and subjected to abusive treatment. During a department-wide staff meeting, he learned that he was being excluded from "close out" assignments that were given to all other accountants in the department. Id. ¶ 16. When Plaintiff asked what his assignment would be, his departmental supervisor, Controller LaShahn Gaines, told him that he was out of order. Id.

6. In response to Plaintiff's subsequent written complaint of unfair employment practices and a hostile work environment, Defendants reduced his duties. Id. ¶ 17. Further, some of the duties that he retained were now being done redundantly by a newly hired consultant who was making substantially more money than he. Id. ¶ 18.

7. In addition, Defendants removed key software from Plaintiff's computer – thereby impeding his ability to complete departmental tasks. Id. ¶ 19. When Plaintiff complained about the problem, Defendants instructed him to stay late and to use someone else's computer. Id.

8. Thereafter, Plaintiff's computer developed hardware problems and needed replacement. Id. ¶ 20. Coincidentally, Defendants decided to replace all of the computers in the Finance Department. Id. Nonetheless, Defendants replaced all of the other computers before replacing Plaintiff's computer – despite the fact that those other computers were not broken. Id.

9. Defendants waited nearly **three (3) years** after Plaintiff's transfer to grant him a step increase. Id. ¶ 22. Although that step increase was made retroactive to the time of the transfer, it was only nominal. That is, rather than raise Plaintiff's salary to the promised $58,000, Defendants increased it to only $47,429. Id. Upon information and belief, the new salary was still substantially lower than those paid to Plaintiff's female counterparts. Id. Moreover, upon information and belief, the increase was merely an "across-the-board" increase that was granted to everyone and did not remedy pay inequities. Id.

10. On the same day as the retroactive pay increase, Defendants issued a new step increase. Id. ¶ 23. This new step increase raised Plaintiff's salary to $54,477, still less than he was supposed to receive three (3) years earlier. Id. Upon information and belief, the increase was merely an "across-the-board" increase that was granted to everyone and did not remedy pay inequities. Id.

11. In May 2004, Defendants delayed a desk audit of Plaintiff for a number of months. Id. ¶ 26. During that time, in which Plaintiff submitted another written complaint of discrimination, a superior notified him that Ms. Gaines had refused to sign the necessary form. Id. According to this supervisor, Keith Dukes, the delay was motivated by Plaintiff's earlier questioning of Ms. Gaines' decision to exclude him from close-out assignments. Id. Mr. Dukes also reported that Ms. Gaines did not want Plaintiff to be part of her team. Id. Further, Plaintiff was told by

    Mr. Dukes and another coworker that Ms. Gaines had asked them to document his productivity. Id.

12. In November 2004, Plaintiff asked Ms. Gaines during a mini-closeout meeting when she would sign the Form 1 Personnel Action Notice – the form that addressed his title and pay situation. Id. ¶ 27. Ms. Gaines responded that he was "out of order" and that she planned to write him up for allegedly disrupting her meeting. Id. Following the mini-closeout meeting, Mr. Dukes and other coworkers cautioned Plaintiff that Ms. Gaines did not want him on her team. Id. In fact, they told him, Ms. Gaines hoped that she could humiliate him so much that he would just retire. Id.

13. Plaintiff did not receive the signed Form 1until February 2005. Id. ¶ 28. Although the form was preprinted with an approval date of September 16, 2004, it was not signed by the CFO until December 27, 2004. Id. Mr. Johnson was told on February 25, 2005 that Ms. Gaines had refused to sign the Form 1 and that the CFO signed it only to resolve a budget issue. Id. The Form 1 changed only Plaintiff's title, not his pay. Id.

14. Ms. Gaines constantly ridiculed Plaintiff about sleeping at his desk and working slowly – both of which resulted from disability. Id. ¶¶ 31, 5. Upon information and belief, Ms. Gaines also made negative comments to Plaintiff's co-workers about Plaintiff. Id. ¶ 32.

15. Ms. Gaines gave awards and acknowledgments to other members of Plaintiff's team but excluded Plaintiff. Id. ¶ 33. Moreover, upon information and belief, Ms. Gaines asked Plaintiff's co-workers to document Plaintiff's alleged lack of timeliness, productivity, and whether he sleeps at his desk. Id.

16. Ms. Gaines made Plaintiff work nights, thereby creating more problems for his vision. Id. ¶ 34.

17. At some point in 2005 prior to his filing of an EEOC charge, when Plaintiff complained to Ms. Gaines about payment, she told him that she could not do anything for him because he had a lawyer. Id. ¶ 35.

# ARGUMENT

A.  **Defendants Apply the Incorrect Standard of Review in Arguing Their Motion to Dismiss**

Defendants incorrectly argue that Plaintiff must fulfill his *prima facie* burden within his complaint. Much of Defendant's Motion to Dismiss Second Amended Complaint relies upon the argument that the standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is whether the complaint satisfies a *prima facie* burden.[1]

The D.C. Circuit does not apply the *prima facie* standard in granting or denying a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

> In its motion to dismiss, the defendant also argues that the complaint fails to make out a prima-facie case of discrimination and retaliation. *See* Mot. to Dis. at 5. Specifically, the defendant relies on cases that are no longer good law to argue that, "[t]o make a case of either discrimination or retaliation, the plaintiff is required to demonstrate, among other things, that an *adverse personnel action* took place." *Id.* (citing *231 *Mitchell v. Baldrige,* 759 F.2d 80, 84 (D.C.Cir.1985); *Douglas v. Pierce,* 707 F.Supp. 567 (D.D.C.1988)).
>
> **The D.C. Circuit has recently held, however, that a plaintiff is not required to set forth the prima-facie elements of a discrimination or retaliation case at the initial stage**. In *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111 (D.C.Cir.2000), the D.C. Circuit recognized that the *McDonnell Douglas* test for proving unlawful discrimination applies, and that the test's first prong places the burden of proof on the plaintiff to establish a prima-facie case of discrimination. **The Circuit cautioned that "None of this, however, has to be accomplished in the complaint itself**." *See id.* FN1
>
> FN1. The Supreme Court explained the *McDonnell Douglas* framework in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

---

[1] "Yet, for the reasons that follow, plaintiff cannot establish a prima facie case of gender discrimination and his claim must fail." *Memorandum in Support of Motion to Dismiss Second Amended Complaint*, §III(A)(1), page 5;
"To establish a *prima facie* case of disability discrimination, Plaintiff Johnson must meet this burden. He fails to do so." *Memorandum in Support of Motion to Dismiss Second Amended Complaint*, §III(A)(2), page 8;
"To establish a *prima facie* case of disability discrimination under a theory for perceived disability, Plaintiff must make the required showing. He fails to do so." *Memorandum in Support of Motion to Dismiss Second Amended Complaint*, §III(A)(2), page 9.
.

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.
>
> As this court has recently held, "[t]hese D.C. Circuit cases serve as a stark reminder that a cornerstone of the Federal Rules of Civil Procedure, and Rule 8 in particular, was to establish a regime of notice pleading rather than one of fact pleading." *Woodruff v. DiMario,* 197 F.R.D. 191, 194 (D.D.C.2000) (Urbina, J.) (citing *Atchinson v. D.C.,* 73 F.3d 418, 421 (D.C.Cir.1996)). In this case, the complaint contains a short and plain statement that gives the defendant fair notice of the facts underlying his claims. The plaintiff, therefore, has met the minimum pleading requirements for his discrimination and retaliation claims.  Sanders v. Veneman, 131 F. Supp.2d 225, *230 -231 (D.D.C., 2001). [Emphasis Added].

The posture of Defendants' Motion to Dismiss must be read in light of the fact that it applies the incorrect standard in many sections.  This is not merely a semantic problem. Defendants' Motion to Dismiss reads more like a Motion for Summary Judgment; e.g. Defendant states "there is no evidence that Defendants were on notice that Plaintiff suffered from these conditions." *Memorandum in Support of Motion to Dismiss Second Amended Complaint*, §III(A)(2), page 9.  Certainly questions of what evidence does or does not exist should be posed during or after discovery.

The proper standard of review was stated by the United States District Court in the District of Columbia in Spelke v. Gonzales, 2007 WL 2800388, *2 (D.D.C.) (D.D.C., 2007).

> Moreover, under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim will not be granted unless the complaint does not contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007), and there is no "reasonably founded hope" that the plaintiff can make a case. *Id.* at 1969 (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741 (1975)).

B.     **Plaintiff has Sufficiently Pled that He Was Discriminated Against on the Basis of His Gender in Violation of Title VII**

Section III.A.1 of the Motion, which addresses Plaintiff's claim for gender discrimination, is an example of Defendants' tendency to site apply incorrect standards. For example, they cite <u>Regan v. Grill Concepts-D.C., Inc.</u> and <u>Murfree-Fleming v. Billington</u> – two summary judgment-related decisions that apply the "*prima facie*" standard. As demonstrated above, that standard is inappropriate and unduly draconian in the context of a Rule 12(b)(6) Motion to Dismiss. Under the Rule (12)(b)(6) standard, Plaintiff easily states a claim that he was discriminated against and that the discrimination was based on his gender. In short, he alleges in the Second Amended Complaint that he was treated less favorably than similarly situated, but equally or less qualified, female employees. <u>See</u> SAC, ¶¶ 9, 14, 22, 23.

Similarly, they erroneously rely on <u>Vance v. Chao</u>, a case that defines "adverse action" "[i]n the ***retaliation*** context" – not in the context of a *discrimination* claim. (Emphasis added.) <u>Vance v. Chao</u>, 496 F.Supp.2d 182, 185 (D.D.C. 2007). This distinction is important, as Plaintiff need not show in the context of Count I that the injury resulting form the adverse action is such that it "'might well' dissuade a reasonable worker from making or supporting a charge of discrimination." Indeed, Title VII prohibits the type of action that would ***prompt*** an employee to make a charge of discrimination:

> (a) Employer practices. It shall be an unlawful employment practice for an employer —
>
>   (1) to fail or refuse to hire or to discharge any individual, ***or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment***, because of such individual's race, color, religion, sex, or national origin. . . .

(Emphasis added.) 42 U.S.C. § 2000e-2. Further, these prohibitions are not limited to those that worsen already-existing conditions or benefits. See id.

The acts and omissions listed in the "Facts" section of this Memorandum easily satisfy this broader "adverse action" standard. Accordingly, Plaintiff states a claim for sexual discrimination in violation of Title VII.

**C.     Plaintiff has Sufficiently Pled that He Was Discriminated Against Based Upon Actual or Perceived Disability Because Plaintiff's Diabetes and Monocular Vision Substantially Limited (or Perceived so by Defendants) A Number of Plaintiff's Major Life Activities Including Seeing.**

Defendants allege that Plaintiff fails to properly identify disabilities in his Second Amended Complaint, citing a four-part factual analysis under 29 C.F.R. §1630.2(j)(2)(i)-(iii) and arguing that Plaintiff fails to meet his *prima facie* burden. Defendants cite the incorrect standard for a Motion to Dismiss under Fed. R. Civ. Proc. 12 (b)(6). *See* discussion *infra*.

Defendants also cite Smith v. District of Columbia, a case where the United States District Court for the District of Columbia considered a Motion for Summary Judgment under Fed. R. Civ. Proc. 56(c). The standard required by a Plaintiff in a Motion for Summary Judgment is far higher, because presumably, discovery as been conducted and there exists a factual record before the Court. For these reasons, Plaintiff respectfully submits that Smith is inapplicable to Defendants' current motion. Defendants provide no authority in their Motion to Dismiss that identifies the specific necessary requirements for pleading disability discrimination and discrimination based upon perceived disability.

Plaintiff submits that he has included the necessary averments in the complaint under Sanders v. Veneman, to allege discrimination based on disability or on perceived disability prior

to conducting any discovery. 131 F. Supp.2d 225, 230-231 (D.D.C., 2001). Paragraph 5 of Plaintiff's Second Amended Complaint states:

> Plaintiff is blind in one eye, and has insulin-dependent diabetes. Plaintiff's condition often causes him to fall asleep with little to no notice. Plaintiff often falls asleep at his desk and sometimes in meetings, because of his diabetes. Plaintiff is still able to do his work and has received the top score on evaluations in 2005. Plaintiff's ability to drive is substantially limited by this fact as well. Additionally, Plaintiff's vision is strained by his diabetes, which is substantially limited by his only having vision in one eye. This causes him to work slowly sometimes. Further, diabetes effects Plaintiff's metabolism, which is a major life activity.

Plaintiff, among other disabilities, has identified his diabetes and monocular vision impairments that substantially limits his vision.

The United States Supreme Court has stated that in some instances monocular vision may be a disability:

> This is not to suggest that monocular individuals have an onerous burden in trying to show that they are disabled. On the contrary, our brief examination of some of the medical literature leaves us sharing the Government's judgment that people with monocular vision "ordinarily" will meet the Act's definition of disability, Brief for United States et al. as *Amici Curiae* 11, and we suppose that defendant companies will often not contest the issue. We simply hold that the Act requires monocular individuals, like others claiming the Act's protection, to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial. Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, *567 119 S.Ct. 2162 (1999).

Further, vision is a stated major life activity as stated in 29 C.F.R. §1630.2 (h)(2)(I): "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Defendants also contend that diabetes is not a *per se* disability. Plaintiff does not rely upon a *per se* disability, rather he has identified the impairment of diabetes and alleges that it substantially impairs the major life activity of seeing.

Defendants further argue that Plaintiff's averments that he was discriminated against based upon perceived disability should be dismissed because "there is no evidence that Defendants were on notice that Plaintiff suffered from these conditions" and that he 'has not shown that his being blind in one eye and diabetic were perceived to substantially limited one or more major life activities.'" *Memorandum in Support of Motion to Dismiss Second Amended Complaint*, §III(A)(2), page 6. Defendants' own language is further demonstration that they are attempting to impose a burden not prescribed by Fed. R. Civ. Proc. 12 (b)(6).

Plaintiff, upon conducting discovery and mounting his evidence, will meet his *prima facie* burden of demonstrating discrimination based on disability and perceived disability. However, he is not required to do so in his complaint.

**D.    Plaintiff has Sufficiently Pled that He Was Discriminated Against Because of His Age in Violation of the ADEA**

The crux of Defendants' argument in Section III.A.3 of the Motion is that Plaintiff fails to establish a *prima facie* case of age discrimination because, they allege, he cannot demonstrate that he suffered an "adverse action." As explained above, the "*prima facie*" test is inapposite to this analysis. Regardless, as also explained above, the face of the Second Amended Complaint contains numerous allegations of "adverse actions." Thus, Defendants' argument fails.

**E.    Plaintiff has Sufficiently Pled that He Was Retaliated Against Because Defendants Denied Plaintiff Work Assignments After He Complained About Discrimination.**

Defendants begin their argument regarding retaliation with a recitation of the incorrect burden, a *prima facie* case, for a Motion to Dismiss under Rule 12(b)(6). Defendants further allege Plaintiff was not engaging in "protected activity". Defendants cite McIntyre v. Peters to argue that Plaintiff's claim for retaliation should be dismissed because Plaintiff did not engage in protected activity. 460 F. Supp. 2d 125, 134 (D.D.C. 2006). In that case, the United States

District Court for the District of the District of Columbia held that a retaliation claim could not survive summary judgment in part because the evidence on the record showed that the Plaintiff in that case had not engaged in "protected activity."

> In the present case, there is no evidence that plaintiff indicated to Hart that he attributed the Balderston promotion to race or age discrimination.
>
> \*\*\*
>
> Plaintiff offers no evidence that he complained of discrimination in this meeting or that he attributed Balderston's selection for the new position to any type of discrimination. With *no* factual support for the assertion in plaintiff's pleadings that he "questioned [d]efendant's favoritism of a white male," plaintiff has failed to demonstrate that he engaged in protected activity when he met with Hart in November 2002. Id.

Plaintiff's allegations in his Second Amended Complaint are quite different from the evidence in McIntyre. Paragraph 25 of the Second Amended Complaint states:

> On September 9, 2004, based on feedback he had received from the desk audit, Plaintiff wrote to Keith Dukes stating "It has been suggested that I am being ignored and discriminated against because of my age (63) and because of my gender and sexual orientation (heterosexual male) all of which, I am told, are protected classes under Title VII and the EEOC laws of the District of Columbia.... Moreover, I have been told that I am protected under the Americans with Disabilities Act, ..."

Plaintiff was clearly complaining specifically about discrimination, which is protected activity even under Defendants' authority. Defendants retaliated against Plaintiff by denying him assignments and bonuses. See *SAC* ¶ 33.

Defendants further argue that Plaintiff does not have sufficient evidence to establish his *prima facie* case for causation. This is an incorrect and unfair burden to impose on Plaintiff at the pleading stage of this litigation. Defendants have access to all of this information. Plaintiff does not. It is unfair for Defendants to argue that Plaintiff does not have the necessary evidence, before discovery is even conducted. Plaintiff's Second Amended Complaint is sufficient under

Fed R. Civ. P. 8 and Sanders v. Veneman, 131 F. Supp.2d 225, 230 -231 (D.D.C., 2001). Ms. Gaines' statement that she could not help Plaintiff because he obtained a lawyer is demonstrative of Defendants' reaction against employees who complain about discrimination. See *SAC* ¶ 122.

**F.     Plaintiff has Sufficiently Pled that He Was Discriminated Against in Violation of the EPA**

Defendants contend, without legal support, that Plaintiff's alleged failure to "link his complaints about his pay to his gender until 2005" precludes him from claiming "in good faith" that his receipt of unequal wages was due to his gender. See *Memorandum in Support of Motion to Dismiss Second Amended Complaint*, § III.A.5, page 15. This contention deals simply with witness credibility and therefore would fail even in support of a summary judgment motion. See Fed. R. Civ. P. 56. Accordingly, the argument falls far short of the showing necessary to justify dismissal pursuant to Rule 12(b)(6). See Spelke v. Gonzales, 2007 WL 2800388, *2 (D.D.C., 2007) ("[U]nder Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim will not be granted unless the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face,' . . . and there is no 'reasonably founded hope' that the plaintiff can make a case." (Citations omitted.) Plaintiff states a claim for violation of the EPA.

**G.     Plaintiff's Claims Are Not Time-Barred**

Defendants repeatedly made representations to Plaintiff promising that disparities in pay would be remedied. Defendants' statements and false assurances prevented Plaintiff from pursing administrative remedies, because he relied on those statements.

> On August 2, 2001 Plaintiff brought his concerns about his promised pay increase to earl Keith Dukes, Supervisor in the General Accounting Office. Mr. Dukes directed Plaintiff to Mr. Earl Cabbell, who assured Plaintiff that he would be compensated at a rate commensurate with his experience and in line with his peers. Plaintiff relied to his detriment on Defendants' assurances that these pay

13

>       inequities would be remedied.   To date Plaintiff has not been brought up to that
>       promised level of pay.

See SAC ¶ 15.

After Defendants' active conduct prevented Plaintiff from timely pursuing his administrative remedies, they may not now argue Plaintiff's claim is time-barred. "Equitable estoppel in a statute of limitations context prevents a Defendant from asserting untimeliness where the Defendant has taken active steps to prevent the plaintiff from litigating in time." Cristwell v. Veneman, 224 F. Supp. 2d 54, 58 (D.D.C. 2002).

Moreover, Plaintiff's claims are timely under the "continuing violation" doctrine. Pursuant to that doctrine, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  AMTRAK v. Morgan, 536 U.S. 101, 128 (2002).  In Count IX of the Second Amended Complaint, Plaintiff asserts a claim of hostile work environment based on disability or perceived disability.  See SAC ¶¶ 126-134.  This harassment consisted of, *inter alia*, ridicule of Plaintiff for being slow and sleeping at his desk, depriving him of important work assignments, and being forced to work nights.  Id. ¶ 128.  This behavior by Defendants further suggests that other adverse actions were motivated by the disability and thereby part of the hostile environment.  Therefore, Plaintiff can claim "continuing violation" discrimination if some the actions occurred within the 180 days preceding his July 2005 filing of a charge with the Equal Employment Opportunity Commission ("EEOC").  See Morgan, 536 U.S. at 128.

Indeed, some of the unlawful conduct did occur within the relevant time period. Throughout the second half of 2004 and the beginning of 2005, in fact, Defendants purposefully

and maliciously delayed a desk audit and signing of a Form 1 on Plaintiff's behalf.  See *SAC* ¶¶ 26-28.  When the Form 1 was finally approved, Defendants declined to give Plaintiff a pay increase.  Id. ¶ 28.

Since the face of the pleading alleges facts sufficient to support a claim of a disability-based hostile environment, Defendants discriminatory actions and omissions amount to a continuing violation.

**H.     Plaintiff Has Provided Proper Notice Under the D.C. Code**

By letter dated June 6, 2007, the undersigned provided Defendants with formal written notice of Plaintiff's claims under the District of Columbia Human Rights Act.  For the reasons stated in the previous subsection, Defendants are equitably estopped from contesting the timeliness of that Notice.

**I.     Plaintiff is Not Suing Mayor Fenty in His Individual Capacity, But Rather As Chief Executive of The District of Columbia**.

The District of Columbia is Plaintiff's employer.  Mayor Fenty is the Chief Executive of the District of Columbia and Plaintiff has named him in that capacity solely.

WHEREFORE, Plaintiff Paul Johnson respectfully requests that this Court DENY Defendants' Motion to Dismiss Second Amended Complaint

Respectfully submitted:

By:_____\\S\\_____
Rebecca N. Strandberg
D.C. Bar No. 368528
Rebecca N. Strandberg & Associates, P.A.
8607 Second Avenue, Suite 405A
Silver Spring, MD 20910
Tel. 240-247-0675
Fax 301-565-9339
firm@strandberglaw.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 4th day of February, 2008, that a copy of the foregoing Plaintiff Paul Johnson's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint was delivered by ECF, to:

Michelle Davy, Esq.
Office of the Attorney General for the District of Columbia
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
Counsel for Defendants

_____/S/_____
Rebecca N. Strandberg

## UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| Paul Johnson, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. **1:07-CV-01033 (JDB)** |
| ) | |
| District of Columbia, et al., ) | |
| ) | |
| Defendants. ) | |

### ORDER

**UPON CONSIDERATION** of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Request or Trial by Jury, and Plaintiff's opposition thereto, it is by the Court this ___ day of _____ 2008, hereby

**ORDERED** that, Defendants' Motion to Dismiss Second Amended Complaint is **DENIED**.

    **SO ORDERED**

                                                                                   **JUDGE**

With Copies to:

Michelle Davy, Esq.
Office of the Attorney General
for the District of Columbia
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001

Rebecca N. Strandberg
Rebecca N. Strandberg & Associates
8607 Second Avenue, Suite 405A
Silver Spring, MD 20910